IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEANNA SCOTT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-11-P |
| | § | |
| ELLIOT WINDSPRINT, ET AL., | § | |
| Defendants. | § | |
| | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

Pending before the Court are two motions: (1) Defendant Kenneth D. Sanders ("Sanders")'s Motion to Dismiss [doc. 13], filed February 13, 2023, and Defendants Elliott Windsprint ("Windsprint") and San Juanita Rodriguez ("Rodriguez)'s Joint Motion to Dismiss [doc. 23], filed March 8, 2023.[1] Having considered the pleadings and all relevant applicable law, the Court **RECOMMENDS** that the Defendants' motions be **GRANTED** and all claims against them be **DISMISSED**.

### I.   RELEVANT BACKGROUND

This case involves a dispute arising out of a Tarrant County, Texas Justice of the Peace case ("JP case") in which Windsprint filed a Sworn Complaint for Eviction against Deanna Scott ("Scott") the *pro se* Plaintiff in the motions pending before the Court.[2] On January 3, 2023, Windsprint and Scott both presented evidence and argument at a trial before Justice of the Peace Sanders (Plaintiff's Complaint ("Pl.'s Compl.") at 61.) After trial and that same day, Sanders signed a Judgment for Windsprint that, in pertinent part, reads:

---

[1] In this Order, the Court will collectively refer to Sanders, Windsprint, and Rodriguez as "Defendants."

[2] The JP case was filed November 1, 2022, and assigned case number JP07-22-EE00103135. Windsprint cited "unpaid rent as grounds for eviction," in the amount of $2,248 spanning September to October 2022.

1

> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT THAT PLAINTIFF(S), ELLIOT WINDSPRINT, DO HAVE AND RECOVER OF THE DEFENDANT(S), DEANNA SCOTT AND ALL OCCUPANTS, POSSESSION OF THE FOLLOWING DESCRIBED PREMISES SITUATED IN JUSTICE PRECINT SEVEN, TARRANT COUNTY, TEXAS, TO WIT: 2402 WINDSHIFT WAY #315 ARLINGTON, TX 76014 PLUS $5,651.96 DELINQUENT RENT, AND ALL COSTS OF THIS SUIT, TOGETHER WITH INTEREST THEREON AT THE RATE OF 7.5000% COPMPOUNDED ANNUALLY FROM DATE OF JUDGMENT.

Scott then filed her Notice of Removal [doc. 1] with the Court on January 5, 2023. Within her Notice of Removal Scott attached a Complaint against Defendants[3] for "Federal Questions about constitutionally protected right[s] violation and consumer protection rights violation."[4] (Pl.'s Compl. at 4.)

Scott filed an application to *proceed in forma pauperis* [doc. 2] on January 5, 2023, and an amended application [doc. 7] on January 11, 2023. The Court granted her application to proceed *in forma pauperis* on January 11, 2023 [doc. 8]. On January 18, 2023, Scott filed her Notice of Request for USM [doc. 9], asking the Court order service of Defendants pursuant to 28 U.S.C. 1915. The Court issued its Order Regarding Completion and Service of Summons [doc. 10] on January 24, 2023. Sanders was served on February 13, 2023 [doc. 18]. Windsprint and Rodriguez were served, respectively, on February 15 and 17, 2023 [doc. 21].

In his Motion to Dismiss, Sanders presents three grounds for prevailing on Scott's claims:

(1) This Court is without jurisdiction because there is no case or controversy between Scott and Justice of the Peace Sanders;
(2) Scott's claims are barred by the *Rooker-Feldman* doctrine; and
(3) Scott's claims against [Sanders] are barred by judicial immunity.

---

[3] Scott also listed Defendant Elliot Winsprint as a Defendant to her lawsuit, a seemingly clerical error. The Court issued an Order recommending dismissal of claims against Defendant Elliot Winsprint on June 12, 2023.

[4] In addition to Scott's Complaint, she attached two additional documents contained within her Notice of Removal [doc. 1]: (1) Scott's "Notice of Counterclaim" against Windsprint and Elliot Windsprint Borrower, LLC, an unnamed party to this lawsuit, and (2) Scott's "Motion to Set Aside Hearing," asking the Court to stay a Justice of the Peace proceeding set for January 3, 2022. These documents were improperly attached and, as such, the Court will not consider the claims for relief contained therein.

(Defendant Kenneth D. Sanders' Motion to Dismiss ("Def. Sanders' Mot. to Dismiss") at 2 (emphasis in original).) For their part, Windsprint and Rodriguez incorporate Sanders' three above-listed arguments and add that Scott has "failed to state adequate grounds for removal of [the] case, and the Court does not have original jurisdiction over the case." (Defendants Elliot Windsprint and San Juanita Rodriguez's Joint Motion to Dismiss ("Defs. Windsprint and Rodriguez's Mot. to Dismiss") at 2.)

## II.   MOTION TO DISMISS STANDARD

The standard for a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss complaints when they fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this Rule 12(b)(6) standard, pleadings must show specific, well-pleaded facts, and not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

In considering a motion to dismiss for failure to state a claim, a court may consider: (1) the pleadings and any attachments to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim, such as insurance policies and underlying complaints. Fed. R. Civ. P. 12(b)(6); *see also Gilchrist Constr. Co., LLC. V. Travelers Indem. Co.*, 358 F.Supp.2d 583 (W.D. La. Jan. 11, 2019) (Court considers insurance

documents not included in plaintiff's complaint but central to plaintiff's insurance claims), citing *Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 WL 4909869, at *2 (5th Cir. 2010).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). The Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. Only a complaint that states a plausible claim for relief survives a motion to dismiss.[5]

## III. DISCUSSION

The threshold issue before the Court is whether this Court has subject matter jurisdiction to hear Scott's suit. Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court action of which the federal district court would have original jurisdiction. "The removing party bears the burden of showing that federal subject matter jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must therefore be resolved *against* the exercise of federal jurisdiction. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 33S (5th Cir. 2000) (emphasis added).

---

[5] Because Scott is a *pro se* litigant, the Court has a duty to liberally construe the pleadings and motions in her favor. Thus, her papers are held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

4

### A. Diversity Jurisdiction

Diversity jurisdiction exists when the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. Here, Scott claims this Court has diversity jurisdiction under § 1332. On the civil cover sheet attached to her Complaint, Scott demands $1,000,000 monetary relief and clearly indicates that she and all three Defendants reside in Tarrant County, Texas. (Pl.'s Compl. at 3.) Thus, Scott has failed to plead that the parties are citizens of different states and, thus, cannot establish diversity jurisdiction for removal to federal court. Accordingly, Scott has not met her burden of pleading diversity jurisdiction and, on this basis, the claims against Defendants Sanders, Windsprint and Rodriguez should be **DISMISSED**.

### B. Federal Question Jurisdiction

Under 28 U.S.C. § 1331, this court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Generally, to determine whether an action presents a federal question for removal purposes, the court must examine the allegations of the plaintiff's well pleaded complaint. *Carpenter v. Wichita Falls Ind. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995). Under the well pleaded complaint rule, a federal question must appear on the face of a plaintiff's state court complaint before a federal district court can exercise removal jurisdiction. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908).

#### 1. FDCPA Claims

Scott first claims federal question jurisdiction under 15 USC §1692, the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA prohibits a "debt collector" from "communicat[ing] with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c. The FDCPA also prohibits any conduct that constitutes

5

"harassment or abuse" and "false or misleading representations" in connection with the collection of a debt. *See* 15 U.S.C. §§ 1692d and 1692e. The Act defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. § 1692a(5). Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." *Brown v. Morris*, 243 Fed. Appx. 31, 35 (5th Cir. 2007) quoting *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir.1997). "A party's general, not specific, debt collection activities are determinative of whether they meet the statutory definition of a debt collector." *Kaltenbach v. Richards*, 464 F.2d 524, 529 (5th Cir. 2006).

Scott's claims regarding the FDCPA are directed at Defendants Sanders and Windsprint. Regarding Sanders, Scott asserts he "violated 15 usc 1692n by not allowing [her] to invoke [her] greater protection in federal consumer protection laws." (Pl.'s Compl. at 7.) As for Windsprint, she claims that she was "sued in eviction court by [Windsprint] to collect an unverified alleged debt," that she "never entered into" with Windsprint. (*Id.* at 6-7.) Further, she alleges that her "consumer lease clearly and consciously states the lease is between [she] and ELLIOT WINDSPRINT BORROWER, LLC not [Defendant Windsprint]" in "violation of 15 usc 1692b(2)." (*Id.* at 7.) She claims that Windsprint has "harassed" her by putting her "name on this publication list of public records by stating [she] ha[s] failed to pay an alleged debt" and by sending the list to her personal email. (*Id.*) In response, Sanders argues that he "is "not a party to the lease and is not a party to the underlying dispute [between Scott, Windsprint and Rodriguez]." (Def. Sanders' Mot. to Dismiss at 4.) Windsprint argues Scott has not adequately plead specific facts to support her allegations that he violated the FDCPA because he is not a debt collector under § 1692(a)(6). (Defs. Windsprint and Rodriguez's Mot. to Dismiss at 8.)

Scott's FDCPA claims are founded in 15 U.S.C. 1692(d), which prohibits debt collectors from engaging "in any conduct that the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." As a threshold matter, the Court finds that neither Sanders nor Windsprint are debt collectors. As pertains to Sanders, Scott's allegations relate solely to his adjudicatory function and not his debt collection practices. Regarding Windsprint, Scott asserts that the actual debt collector is Elliot Windsprint Borrower, LLC, a non-party to the suit. Moreover, she wholly fails to allege facts that could support that Windsprint regularly collects debts in his business activities.

Beyond the Court's threshold finding, Scott's Complaint insufficiently pleads Windsprint's actions violated the FDCPA. The statute also sets out examples of harassment or abuse, including "[t]he use of obscene or profane language," § 1692d(2), and "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," § 1692d(5). Here, Scott does not set out specific facts that support her claim that Windsprint's debt collection activities constitute harassment or abuse under this statute. The FDCPA does not prohibit a debt collector from contacting a debtor multiple times in an attempt to collect a legitimate debt. *See McVey v. Bay Area Credit Serv.*, No. 4:10-CV-359-A, 2010 WL 2927388, at *2-3 (N.D. Tex. July 26, 2010) (multiple phone calls per week seeking payment of debt did not constitute harassment or abuse). Here, the only communication that Scott alleges she received from Windsprint was a single email "list of people including [herself] who alleged[ly] owe[] a debt [of] $1,509.40." (Pl.'s Compl. at 7.) The content of this email, as pled, is not harassing. As such, these general and conclusory allegations are inadequate.

For the foregoing reasons, Scott's claims under the FDPCA must be **DISMISSED** as to Defendants Sanders and Windsprint.

### 2. Due Process Claims

Scott's next claims federal question jurisdiction by asserting due process violations by all three Defendants during the JP case's trial. Scott pleads, "Article 1 Section 19 of the Texas constitution provides that "DEPRIVATION OF LIFE, LIBERTY, PROPERTY ETC. BY DUE COURT OF LAW."" (Pl.'s Compl. at 8.) She claims the JP case's "record does not reflect any verification of the alleged debt [Windsprint and Rodriguez]" sought." (*Id.*) She also claims Sanders "deprived [her] of [her] right for due process," and that she "submitted a notice of dispute in which Defendants [Windsprint and Rodriguez] failed to submit verification on the record." (*Id.*) It is clear that Scott attempts to plead deprivations and injuries caused by the JP case's trial.[6] However, as pled, Scott's Complaint fails to allege anything arising under the "Constitution, laws, or treaties of the *United States.*" *See* 28 U.S.C. 1331 (emphasis added). Accordingly, Scott's claims for violations of due process against Defendants Sanders, Windsprint and Rodriguez must be **DISMISSED**.

### IV.   RECOMMENDATION

For the reasons set above, the Court **RECOMMENDS** that Sanders' Motion to Dismiss [doc. 13] and Windsprint and Rodriguez's Joint Motion to Dismiss [doc. 23] be **GRANTED** and all claims against them be **DISMISSED**.

---

[6] The *Rooker-Feldman* doctrine, prevents "[federal] cases brought by state-court losers complaining of injuries caused by state-court judgments." *Id.* The doctrine is applicable only where a "party suffered an adverse final judgment rendered by a state's court of last resort, and then initiated proceedings in a lower federal court seeking review and reversal of the state court judgment." *Ill. Cent. R. Co. v. Guy*, 682 F.2d 381, 390 (5th Cir. 2012). The pleadings before the Court reflect a final judgment in the JP case. (Pl.'s Compl at 61.) However, they do not reflect Scott has initiated the requisite and appropriate state-court appellate procedures. Accordingly, at this time, the Court will not analyze this matter with respect to the *Rooker-Feldman* doctrine.

## **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until June 29, 2023, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusion and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 15, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE